Case number 21-3089, United States of America v. Curtis Jenkins, appellant. Ms. Goetzel for the appellant, Mr. Brady. Ms. Goetzel, go ahead when you're ready. Good morning, and may it please the court, Celia Goetzel for appellant Curtis Jenkins. I'd like to reserve two minutes for rebuttal. This case presents the district courts from considering certain factors in determining whether extraordinary and compelling reasons warrant reducing a defendant's sentence. The district court believed that it lacked authority and discretion to consider factors dissimilar or incomparable to the guidelines criteria, including significant changes in the legal landscape. As this court already recognized in United States v. Kevin Johnson, district courts may consider arguments based on Winstead and any other grounds the defendant presents to justify a sentence reduction. The only prohibition on what may satisfy the standard is clearly articulated in 28 U.S.C. section 994-T, where Congress explicitly stated, rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason for sentence reduction. So you raise various arguments. Let's start with the commentary, the application note. Was the district court wrong to consider the application note as helpful guidance and expressly say that it was not bound by the Her position is that the district court can consider the commentary, but that given the posture of the commentary right now, the fact that it is application notes and the fact that it is not applicable means that the district court cannot be constrained by the commentary in the way that this district court was. Well, but she wasn't. She said this is helpful guidance. She expressly said she wasn't bound by the commentary, and she didn't simply look at whether the medical and family considerations were within the four corners of the application note. She looked to whether there were comparable medical and family issues. That she she used the commentary to the exclusion of considering other arguments. What did she not put aside? Right. Put aside the retroactivity and the Winstead issues for now, which are different just on considering the application. Do you think she gave it too much weight? Just on the on the medical and family points. Our position is that reliance on the guidance on the commentary is improper because of the reasons stated in law, that it is not policy, that it's not a policy judgment by the United States Sentencing Commission of what constitutes the appropriate use of compassionate release in light of the First Step Act and recent changes. So our position is that the commentary is not appropriate for the court to consider. Had the court considered, had the court done what your honor just proposed without excluding, without excluding certain arguments such as, for example, the court did not consider the the long administrative segregation that. I'm sorry, didn't consider what? The long period of administrative segregation that Mr. Jenkins was subject to because of his physical inability to work in a job that the BOP directed him to work at. He was in the SHU, which is solitary housing unit for almost a year, eight months for no justifiable reason. And that was another reason set forth. And the court discussed it in the background, but then sort of ignored it in her analysis and turned only to his medical conditions and family circumstances. So it's clear from the opinion that the court was not addressing, felt bound, it felt constrained by the types and kinds of things listed in the criteria when those types and kinds of things are not prohibited. The court is not prohibited from considering those under the plain text of the statute or for any other reason. The segregation on this point is what you're relying on. But also the court. I mean, I'm just you've got we've got medical and family stuff, which she did consider. You have the retro at the non retroactive change in law, which is a different point come to. And you have the Winstead and one other case, the intervening cases, which will come to just trying to figure out, is there anything else? She appeared to believe that he had to be the only available caregiver, which is language that comes directly from the guidelines criteria in order to satisfy the standard based on family circumstances. So that those would be other indications that she felt bound, constrained or tethered to the guidelines commentary. So your next major point is the intervening legal changes. It's one statutory and two cases as to the statute. Why isn't the simple answer? There's nothing extraordinary with prospective application of new sentencing statutes, and that's exactly what Congress mandated here. The problem with that, your honor, is that that's putting a categorical bar on something where there is none. So. Congress, and it's the district court's explanation why prospective application of a new statute is not extraordinary. But what's wrong with that? Well, that's basically saying in no that's the same thing as saying in no case. And because it because that's not as the court in Alcaba demonstrated, I mean explained, that's basically not making an individualized assessment that's required under the statute. 3582, the court should make an individualized assessment of the impact of whatever prospective change in conjunction with the totality of the circumstances. Can never say this kind of thing is not exceptional. The court can find something not extraordinary or compelling in a specific case. That's not what the court did here, though. The court, there would be nothing wrong with the court saying that I don't find this change in the law that Congress applied prospectively to be extraordinary and compelling to help show the defendant's extraordinary and compelling reasons, plural, warrants reducing this particular defendant's sentence. But that's not what the district court did here. The district court lacked, thought that she lacked authority. Ms. Ketso, you're talking about the anti-stacking provision, is that correct? That's correct. His sentence was based on a 45-year mandatory minimum. What do you mean by based on? He didn't plead to more than one covered offense. There was no stacking. The plea was basically a Hobson's choice based on the stacking and the indictment. This is your argument that the plea was tainted? That's correct, your honor. Well, that's a non-starter for me. If we start getting into what's overhanging plea bargaining, there's no end to it. It's not just the prospective change in law that impacted the harshness of Mr. Jenkins' sentence. It is also the fact that he was subject to 22 to 27 years regardless. So on the plea that he took, his guidelines range was 22 to 27 years because of his career offender. And this affected his negotiating position and the outcome of the plea bargain. I don't doubt that that could happen, but I don't think it's a judicially manageable consideration. It's going to be something that's going to be not limited just to a change in in a way that burdens the defendant. And that's why the district court has broad discretion to consider things in particular cases. That's why the district court can look at the case as a whole. The court originally sentenced the defendant. It's exactly what the court said in Long. The court has broad discretion to consider in an individual case. So the defendant mistakenly thought his mother was dying of cancer and then pleads to something wouldn't otherwise have done. And then it turns out she's not dying or what have you. I mean, lots of things can affect the bargaining position. We agree, Your Honor. And that's why in that particular case, if a judge found that that wasn't an extraordinary or compelling reason that contributed to the totality of the circumstances that warranted a sentence reduction, there would be no abuse of discretion there. So here, the problem is that the court would not consider it thought it was its statutory authority was restrained or that it had no choice, no authority and the language that the court. That may be, but that's I understand your point about feeling constrained, but what I'm focusing on is what it felt constrained not to consider. It's just to say this, this taint on the playbook. So I have your point. So our argument is that the district court is in the best position to consider those arguments and has broad discretion and that we should trust district judges to exercise their discretion and that at some point there will be a quorum in the Sentencing Commission and the Sentencing Commission. This is only a temporary moment in time. The Sentencing Commission will explain the appropriate use of 3582 and homilgate guidelines in light of the current events and in light of the change in the statute. And until that happens, the district court is not prohibited from considering changes in the law. On your Winstead arguments, those are arguments not about intervening legal change in the sense there's a new statute, nor about the typical compassionate release case, which is an intervening factual change, which makes the defendant sympathetic candidate for release. They are arguments about legal error in the sentence itself. District court just made an error in the sentencing. Why is that appropriately subject for compassionate release as opposed to just a plain vanilla 2255 argument? You're collaterally attacking the sentence. You're not arguing that something has happened post-sentencing. So, it may be proper through a 2255, but that's not, but first of all, Mr. Jenkins wasn't moving for compassionate release based solely, and compassionate release is not actually, those are not actually words that appear in the agree. I understand your honor. So, it is a sentence relief mechanism. It was contemplated as a safety valve. There is nothing in the statute or in 2255 that prohibits a court from considering the original sentence in deciding whether to reduce a sentence. So, there is no textual bar for considering it. I mean, there are a lot of cases that stand for the proposition that if you're challenging the duration of confinement reflected in a sentence, you must bring that claim exclusively through habeas, and 2255 is the reasonable substitute. Habeas. Mr. Jenkins was not challenging the lawfulness of his sentence. He was not seeking to have his sentence vacated and have a resentencing. He was not challenging the constitutionality of his sentence. He was. Well, except, I mean, your Winstead argument is precisely about, it's precisely a challenge to the lawfulness of a sentence. Respectfully, your honor, we weren't challenging the lawfulness of a sentence. We were asking the district court to consider the sentencing error in considering whether she should reduce the sentence. We're not saying that under 2255, if the sentence is unlawful or unconstitutional, the court must correct it. There is no alternative. There's no discretion. Now, there are procedural bars, but if the sentence is unconstitutional and unlawful, the district court must correct it. That is not what 3582. 3582 is a totally separate procedural mechanism to sentencing modification. It's a relief. It's a safety valve. It was contemplated as that, and so there is no reason why a district court is barred from considering the totality of the circumstances, including section 3553A factors when the court is considering whether extraordinary and compelling reasons warrant reducing a defendant's sentence, because 35, I mean, the Winstead error is, would be viewed under 35, like, courts that have said that district courts cannot consider changes in the law have said that courts can consider these changes when they get to the 3553A factors, but the 3553A factors overlap with reasons that can be extraordinary and compelling. The 3553A factors are all-encompassing. They include the personal history and characteristics of the defendant, rehabilitation. Congress contemplated that those factors, including what the proper sentence would be, would be considered as part of the extraordinary and compelling reasons analysis, and that's clear from its prohibition of rehabilitation alone being an extraordinary and compelling reason. Do you think his sentence was lawful? Your Honor, that's not what we've, his sentence was not, his sentence was imposed based on a career offender range that did not apply, so to say something is lawful or not lawful in the context of habeas and various other things is very complicated matter, so we haven't, he hasn't brought a habeas motion. He's not saying that his, that he must be released from his sentence because it is unlawful. Here he is saying that a totality of the circumstances warrant reducing his sentence and asking the court to consider the error that was made at sentencing. When the district court imposed the sentence, did the district court commit error? Yes, because Winstead says the district court committed error. And that sounds an awful lot like you're challenging the legality of the sentence. We didn't bring a 2255. We didn't say that the court. Part of, maybe part of the reason you didn't bring a 2255 is that actually among, you waived your right to bring a 2255 as part of the bargain that you struck, and the collateral attack waiver in his plea deal seems all the more to be somewhat skeptical now of whether compassionate release statute allows you to, in effect, do the same thing. Respectfully, the district court could consider those arguments in finding that in this particular case, Mr. Jenkins' sentence or the reasons that he proffered are not extraordinary and compelling, but it can't categorically bar considerations of all of the original sentence in determining whether extraordinary and compelling reasons warrant a sentence. You think a waiver of compassionate, future compassionate release motion is something that could be put into a plea deal? Your honor, that the DOJ currently has a policy that it will not do that because of, because the compassionate release statute is a relief mechanism. It's a sentence reduction mechanism, and district courts can see through. Sorry, go ahead. District courts have the ability to see in individual circumstances to determine whether they think something is unusual and convincing to them that compels them to reduce someone's sentence and doesn't, but that's not what happened here. Do you think DOJ might take a different position on that if we were to hold that the compassionate, any legal error in the sentence can be challenged through compassionate release on the theory that you're not saying it compels relief as a matter of law, you're just saying it's a factor to be considered? Your honor, we're not asking the court, and that's not the decision before the court, to say that all legal error can be challenged through compassionate release. There will be... That's your theory. Our theory is that the court must consider a totality of the circumstances... Including any legal error in the sentence. Including any legal error in the sentence as part of a totality of the circumstances analysis. So we're not saying that... And perhaps, I mean, courts have found that legal error alone, legal error alone with nothing else, cannot be extraordinary and compelling. But to say that legal error in all cases as a matter of law cannot be extraordinary and compelling doesn't... There is no bar in the statute for courts to consider legal error. So the courts that have said that courts can't consider legal error have invented a prohibition, a categorical prohibition, and they shouldn't do that because the sentencing commission is tasked, and it's in the best position to study the appropriate use of compassionate release and create guidelines that explain its appropriate use. And it hasn't had an opportunity to do that, and it will do that. The court, by doing that, these other circuits have usurped the discretion of the district judge and of the sentencing commission. Anything else, Dr. Ginsburg? Okay, thank you. We'll give you a few minutes on rebuttal. Good morning. Good morning, Your Honor. May it please the court, Kevin Burnett of the United States. I'd like to begin with the long issue and the standard, because that's where we began with the compellence argument. And just first, the trial court clearly demonstrated that it understood the legal standard and that it did not consider itself bound by long. And we have the relevant quotes in our opposition. I'm not going to belabor this point unless there are any questions. But it's laid out very clearly and very early when it's laying out the legal standard. The court says on JA-243, for instance, it recognizes long, it cites long, it cites other cases that have recognized that 1B1.13 is not controlling, but then says even though it's not binding, I can still inform the analysis. And then the court goes on, on 244 of the joint appendix to say the court finds it useful to consider the suggestions as general guidance. So the court clearly understood what the legal standard was. The court does need to start from somewhere. I mean, certain courts have been very clear that extraordinary compelling does not mean that court was doing. It was starting from somewhere. It was just using the commission guidelines as sort of a starting point to reach the very argument that appellant was making regarding his health conditions, regarding COVID, regarding his mother. And then moving on to the sentencing issues as well, which we'll discuss. But I think the court- It was very fact bound on the family and health issues. It then said categorically, I shouldn't, I can't or shouldn't consider the intervening statute that was made prospective for the two intervening judicial decisions. So what's, what do you, how do you answer your friend's argument that those considerations should have been assessed case by case? Throw everything into the hopper, I guess. How bad was the sentencing error versus how bad was his disease? Right. So we disagree with appellant on that. We don't think that the district court, the district courts in general should consider those factors. I would say too, just as I start this question, I think that the district court was doing two things. And so in the section that your honor referred to, and that's why we briefed it the way that we have, and we're trying to tease out both of those things. I think the district court is first of all saying, I shouldn't be considering these things. These things are not appropriate for professional release. But the district court is also engaging with appellant's arguments about how harsh the sentence was. And she goes into some detail about that. He talks about what she said at sentencing. She acknowledges that perhaps it could be considered harsh, and she goes through the exact numbers. So she goes through the fact that it was a C1C fleet. It was 96 to 144 month range. She sentenced at the bottom. And so I think she's, she's saying, she's also basically saying, even if I thought that these were proper considerations, they're just not enough to show extraordinary and compelling circumstances in this situation, where he was not sentenced as a career offender. He was not sentenced under ACCA. Where do you get that, that alternative? I didn't, I didn't read it that way. So if you go to the order, which is. I have it. Right. At JA, sorry, JA 245. Right. Sentence itself was largely driven by the 60 year mandatory minimum. Right. Which I think that's a typo. She used 60 month mandatory minimum. And then she goes on, you know, the grass concludes that the original sentence was harsh. She acknowledges that his circumstances of his incarceration, talking about, appellant was talking about solitary confinement. She seems to be acknowledging that as well. And then she goes on to say, as I think this is the point your honor is making, says that the compassionate release statute was not intended to serve as a second chance. And there's more language along those lines. Then in the next paragraph, she's talking about an agreed 96 to 144 months of incarceration. So I agree with your honor that she is more squarely saying, I shouldn't be considering these facts. And she may well be right about that, but it is categorical. That's correct. I do think she's definitely saying that. And so just starting on that first point, the government agrees with that. And I think the government would point this court to Andrews. That's a very good case on that, but it's not just Andrews, it's Jarvis, it's backer. There are other cases. This is the point that you have to go through 2255 to challenge. That's definitely a part of it. And backer says that squarely. So we would agree with that. Do you see that in the opinion? In fact, yes, it does say that in the in the judge, district judges. Oh no, the judge did not discuss 2255. No, it's an alternative. But what we would submit that is an alternative that defendants can't avail themselves of. I mean, it may be implicit in her statement. It may be, it may be a It may follow from her statement. The compassionate release statute was not intended to serve as a second chance to address the sentence. The corollary of that is that kind of argument. She says categorically don't raise it through compassionate release. The suggestion might be to raise it through 2255. I mean, yes, it is pretty cryptic. That's right. I acknowledge that she doesn't mention 22. Is that in Andrews, the case she cites it? Does Andrews talk about 2255? I don't believe so. But backer does. And I think that this report cited backer as well, if I'm memory correct. It seems to me what you just said about the district judge is not inconsistent with the defendant's argument here, the petitioner's an attack on the sentence. Attacks on the sentence have to be rooted through 2255, let's say. But something that says, well, look, the sentence was lawful. I understand that. Not saying it was unlawful. It was when it was when it was opposed. It hasn't become unlawful. I'm asking for, for compassionate release for respect based upon post sentencing developments. Well, I think what I think that there's a lot of of references around these cases to the point that it is about post sentencing developments. That's why the department wouldn't rule that out in an agreement. Right. I mean, it wouldn't make sense to say you can't raise something that hasn't yet happened. Well, I think, yes, the compassionate release statute inherently is about post sentencing developments. But I think cases like Andrews and Jarvis and Thacker are suggesting those developments do not deal with the length of somebody's sentence. So, for example, a post sentencing development, the compassionate release statute would be designed for would be terminal for instance. Health conditions like COVID. And here, you know, of course, we would submit, we've briefed it this way, that appellants health conditions did not rise to that level. Right. And the district court explains, I think, why that is. I won't spend much time on that. But pieces like Andrews and Thacker and Jarvis and there are others, and frankly, we have no space in our opposition, but there's Hunter, there's a case in Crandall in the Eighth Circuit. There are other circuits that make clear that there's nothing extraordinary about later law that makes a prospective change in career offender status, what qualifies. There's nothing extraordinary about that. I think Andrews says that very squarely. In fact, the ordinary rule is that it doesn't apply retroactively, it applies prospectively. Well, with respect to the awfulness of the sentence, suppose something is decriminalized. After the sentence is imposed, the person is serving the sentence. In other words, society has taken a different view, changed its view of the nature of the conduct. That strikes me as something that fits so nicely with 3553 fact. That's asking about whether the sentence is consistent with needs for deterrence, and there are at least two factors that would seem to take that directly into account. But you're saying can't raise it? Well, they could raise it if they establish some other independent, extraordinary, and compelling reason. Just focusing on the decriminalization hypothetical, that's the civic one. Congress almost always, when they decriminalize something, they have a retroactivity provision in the statute. Well, deal with my case. Right. Well, let's say that they did it, right? So in that case, the court could consider that under the 3553 factors, but that wouldn't be an extraordinary and compelling circumstance. So the defendant- Can't get there unless it is, right? Can't get to the 3553. Right, unless they show something. Unless something is. Right, unless there's something else, some serious health condition or something like that. Well, or maybe this. Well, I mean, I think our position would still be that that's not an extraordinary and compelling circumstance, but I also think, I understand your honor's point, likely Congress, likely it would not become an issue because Congress would make some sort of- Yeah, I understand. I'm not aware of any where the motion is not a habeas motion, but also is not viewed as an attack on the Senate. Yeah, I'm not aware of any other situation like that either. I think this is unique in that regard. There's no opportunity out of bounds to attack the legality of the Senate. It's not on the table. Well, through this mechanism, yes. But again, it would say that you could attack it through a 2255. I understand that. I'm saying through this mechanism, it is not a threat to the legality of the Senate. Right, I understand. I see I'm running out of time. I don't want to take up any more of the court's time. I can respond to any other questions. If not, I'll just conclude there. We were just asking you for the district court's order. Thank you. Thank you. I guess, give me one second, counsel. I'm back. In your brief, I didn't see you taking a position on the circuits, but is that correct? Well, we noted in a footnote. That one that says in the alternative? It's a complete your honor to it, but it's discussing these cases like the stacker Andrews. I'm sorry, is this is on the question of intervening statutes that are by their terms perspective or intervening judicial decisions that, of course, are retroactive? We definitely deal with the first. Yeah, I thought there's a split on the first question, right? That's correct. And we, our position is basically these cases are right. These cases provide even more basis to affirm the district court's work. And that's in your brief? Well, I can bring up the exact language and I'll point your honor to the footnote. Okay, it's footnote 5. It starts on page 20. So, the cases, the circuit split that the appellant is focused on, those cases, Andrews, Jarvis, and Thacker are dealing squarely with 924C stack. That was the issue of those cases. And we say, because no stacking occurred in this case, this court need not address the issue here. And this also, by the way, gets to your honor's about the fact that he didn't receive his career offender sentence. But we then say these decisions do, however, provide further support for the proposition that the district court did not err in rejecting these arguments. And then we say, when said the arguments are misplaced on other grounds. And that's why I want to convey to the court that I think we have two independent arguments for why the district court was correct. Ordinarily, I think you would agree. We do not, as a practice, resolve a matter that you have to resolve, even a statute. Right. So, all I'm trying to convey is I think there are two different ways the district court's decision could be affirmed on this. The first is Andrews, Jarvis, Thacker. Because even though those did deal with 924C, there's a lot of broad language in there about how there's nothing extraordinary about the change in these types of considerations. Even with intervening cases. Even with intervening cases. So, that's one way this court could affirm. The other way this court could affirm is dealing more with what Judge Ginsburg's question was earlier. He wasn't sentenced under these provisions. And I do think that the district court understood that. And the opinion, the orders, teases that out. Even though I acknowledge, as I was responding to Judge Patz's questions, that it more squarely seems to be saying, I shouldn't be considering this. Let me send a message back to the department. As I understand it, in a circumstance like this, you're not obliged to observe the formalities, some of the formalities that we ordinarily expect under our rules. Defendant is excused from that. Petitioner is excused from that as well. It would still be useful for the court if the government did have such things as a summary of its argument and a table of its cases. I understand your honor. Thank you. I'll take that back. Thank you. Just want to make two points quickly. One about the government's arguments and its lack of other statutory mechanisms. First of all, the government's, both of the government's positions that it just took, the first, that the court should follow Jarvis Thacker and those cases, the government did not brief on appeal. The second position that the government takes, that he wasn't sentenced under these provisions, the government did not brief to the district court. So the government never presented the arguments that it makes in its brief here to the district court, the district court to consider whether, to consider whether... We can affirm on any ground supported by the record. That's correct, your honor. And the district court, regardless of whether or not there was an alternative case specific holding, there's clearly a holding that as a general matter shouldn't be considering intervening legal changes. That would be the government's... First, the argument that the government is saying where the court should follow Jarvis and Thacker, where it didn't brief that on appeal. The argument that the court, that the government did brief on appeal was that there are no extraordinary and compelling reasons in this case because it claims that there was no prejudice. He wasn't sentenced under these statutes. It didn't say that in the district court. All it said, it only addressed his medical issues in the district court. And the second thing to answer Judge Ginsburg's question is that 3582C2 provides a sentence relief mechanism. Section 404B provides a sentence relief mechanism. The inquiry isn't, quote unquote, out of bounds. It's discretionary. So it's discretionary and it will... And the Tenancy Commission is tasked with determining the appropriate use and it will, and courts will be bound by that. Thank you very much. Thank you.
judges: Katsas, Walker, Ginsburg